**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| CHRIS GEE,<br><br>        Plaintiff,<br><br>  vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No. 2:16-cv-00124-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 14, 20 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 20. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No. 20).

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless."

*Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate

nondisability determination." *Id*. at 1115 (quotation and citation omitted). The

party appealing the ALJ's decision generally bears the burden of establishing that

it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

§§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income and disability insurance benefits on August 22, 2012, alleging an onset date of September 28, 2008. Tr. 241-44, 245-50. The applications were denied initially, Tr. 160-63, and upon reconsideration, Tr. 165-70. Plaintiff appeared for a hearing before an administrative law judge (ALJ) on June 9, 2014, and supplemental hearings on August 28, 2014 and September 23, 2014. Tr. 33-44, 45-93, 94-107.[1] On September 26, 2014, the ALJ denied Plaintiff's claim. Tr. 16-27.

---

[1] At the June 2014 hearing, Plaintiff was unrepresented and the medical expert, Dr. Veraldi, opined more information was needed. Tr. 41-42. Accordingly, the ALJ ordered another psychological evaluation and continued the hearing. Tr. 41-42. At

At the outset, the ALJ found that Plaintiff met the insured status requirements of the Act with respect to his disability insurance benefit claim through December 31, 2013. Tr. 18. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 28, 2008, the alleged onset date. Tr. 18. At step two, the ALJ found Plaintiff has the following severe impairments: plantar fasciitis; asthma; obesity; a major depressive disorder; an anxiety-related disorder; and a personality disorder. Tr. 18. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. Tr. 19. The ALJ then found that Plaintiff has the RFC

> to perform a limited range of medium work. The claimant can lift and/or carry a maximum of 25 pounds frequently and maximum of 50 pounds occasionally. He can sit for 2 hours at a time for a total of 6 hours during an 8-hour workday with normal breaks. The claimant can stand for 2 hours at a time for a total of 6 hours in an 8-hour workday with normal breaks. Likewise, he can stand for 2 hours at a time for a total of 6 hours in an 8-hour day with normal breaks. The claimant can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. The claimant should avoid concentrated exposure to pulmonary irritants, unprotected heights, and hazardous machinery. The claimant can perform work that does not involve more than occasional or superficial contact with the general public or crowded work settings. The

a supplemental hearing held August 28, 2014, Plaintiff, who was represented, testified, as did Dr. Veraldi. Tr. 45-93. A second supplemental hearing was held September 23, 2014, to obtain the testimony of a vocational expert. Tr. 94-107.

claimant can work and interact with small groups of co-workers, but no work requiring close cooperation with co-workers (e.g., no teamwork-type work activities). He would do best where there is no close supervision where the supervisor lays out job instructions with occasional supervision thereafter (e.g., no over the shoulder frequent type supervision). Although the claimant takes prescribed medication for physical and mental symptomology, despite any side effects of the medication, the claimant would be able to remain reasonably attentive and responsive in a work setting and would be able to carry out normal work assignments satisfactorily.

Tr. 21.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 26. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff can perform, such as dining room attendant; laundry worker; store laborer; housekeeping cleaning; cafeteria attendant; and price marker. Tr. 27. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from September 28, 2008, through the date of the decision. Tr. 27.

On March 25, 2016, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI and disability insurance benefits under Title II of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly discredited Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence;

3. Whether the ALJ properly weighed the lay witness testimony; and

4. Whether this Court should consider new evidence submitted to the Appeals Council.[2]

ECF No. 14 at 12.

**A. Adverse Credibility Finding**

Plaintiff first faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting his symptom claims. ECF No. 14 at 12-16. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must

_____

[2] Although Plaintiff addresses Dr. Islam-Zwart's records with the medical evidence, the Court elects to address these records as new evidence because the ALJ did not have the opportunity to consider them.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that [his] impairment could reasonably be

expected to cause the severity of the symptom [he] has alleged; [he] need only

show that it could reasonably have caused some degree of the symptom." *Vasquez*

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for findings that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely credible." Tr. 22.

*1. Conservative Medical Treatment*

The ALJ found Plaintiff has undergone essentially conservative treatment. Tr. 19, 22-23. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)). Here, the ALJ noted Plaintiff reported foot pain and numbness since approximately 2012. Tr. 19 (citing Tr. 374) (on July 2, 2012, Plaintiff told Dr. Kingsley Ugorji, his primary care physician, he experienced

intermittent bilateral numbness of his hands and feet approximately one to two times a week).  The ALJ further noted that on July 15, 2014, Plaintiff underwent podiatric examination for a "several year history of left heel pain and more recent onset of similar right heel pain."  Tr. 19 (citing Tr. 439).  On that date, Katie Swanstrom, D.P.M., reported Plaintiff's chief complaint was left heel pain, present for several years, and with gradual onset; previous treatment had included anti-inflammatories and stretching; Plaintiff told Dr. Swanstrom that he was starting to experience a similar pain in his right foot but it was mild; and Dr. Swanstrom gave Plaintiff a cortisone injection.  Tr. 19 (citing Tr. 439).  Similarly, the ALJ noted that on August 12, 2014, Plaintiff told Dr. Swanstrom the injection had helped for two days and Dr. Swanstrom gave Plaintiff another injection.  Tr. 19 (citing Tr. 467).  At both appointments, Plaintiff was diagnosed with bilateral plantar fasciitis/enthesopathy.[3]  Tr. 19 (citing Tr. 439, 465).  In addition, the ALJ found the

_____

[3] Plantar fasciitis is one of the most common causes of heel pain.  It involves inflammation of a thick band of tissue that runs across the bottom of the foot and connects the heel bone to the toes (plantar fascia).  http://www.mayoclinic.org/diseases-conditions/plantar-fas.  Enthesopathy is also one of the most common causes of posterior heel pain.  It is a common clinical finding denoting pathology at the "entheses," i.e. attachment sites of muscles,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

treating podiatrist discussed treatment options with Plaintiff and reported high success rates with conservative treatment of this pathology. Tr. 19 (citing Tr. 439) (Dr. Swanstrom discussed proper shoe gear, anti-inflammatory medications and injections of the fascia; she provided stretching instructions, recommended ice massage and gave Plaintiff an injection; and she discussed the high success rates with conservative treatment for this pathology). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

Regarding Plaintiff's asthma, the ALJ found that it was also controlled with conservative treatment, specifically, inhalers and steroids. Tr. 22; *see, e.g.,* Tr. 75 (Plaintiff testified he had been using rescue inhalers for asthma for years). This additional evidence of treating an ailment with conservative treatment is also sufficient to discount Plaintiff's subjective complaints. *See also Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006) (An impairment that can be effectively controlled with treatment is not disabling.). Here, the ALJ found Plaintiff's medical record demonstrated that these treatments were effective because Plaintiff did not seek or require any medical treatment between September 2008 and November 2011, nor between July 2012 and February 2014. Tr. 22

---

tendons, joint capsules, ligaments and fascia to the bone.

https://www.ncbi.nlm.nih.gov/pubmed/11396326.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

(citing Tr. 384) (Plaintiff saw primary care physician Dr. Ugorji for asthma in November 2011); Tr. 390 (again in July 2012); Tr. 393, 396 (and again in February and April 2014). The ALJ found the effectiveness of conservative treatment for asthma diminished Plaintiff's credibility. This was a specific, clear and convincing reason to find Plaintiff was not entirely credible.

### 2. Medication

Next, the ALJ found the lack of medication treatment for Plaintiff's pain complaints suggests Plaintiff's pain symptom are not severe enough to interfere with Plaintiff's ability to perform basic work activity. Tr. 22. The type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms as well is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (2011).[4] The lack of prescription medication is an appropriate consideration in determining credibility. *See Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir. 1998) (noting claimant's use of nonprescription medication as a factor supporting credibility determination). Here, the ALJ noted Plaintiff had not been prescribed anti-

---

[4] As of March 27, 2017, C.F.R. §§ 1529(c) and 416.929(c) were amended. The ALJ rendered his decision on September 26, 2014, thus, the Court applies the versions effective June 13, 2011.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

inflammatories, analgesics, or analgesics with narcotics for his alleged pain. Tr. 22. The ALJ found that, despite Plaintiff's allegation that severe foot pain prevented him from walking more than one block or standing more than 5-10 minutes, Plaintiff's lack of need for prescribed medication is inconsistent with disabling symptoms. Tr. 22 (citing Tr. 73-74) (Plaintiff testified he cannot walk more than one block or stand more than 5-10 minutes); Tr. 87 (Plaintiff testified the only thing he takes for pain is Ibuprofen "maybe once or twice a week.")). The lack of pain medication undercuts Plaintiff's symptom complaints of severe pain.

Plaintiff contends the ALJ erred because he disregarded the treating doctor's preference to treat conservatively with Ibuprofen. ECF No. 14 at 14. Plaintiff misunderstands the ALJ's reasoning: if Plaintiff's pain was disabling, he would likely take more than Ibuprofen "maybe once or twice a week" in order to obtain relief. This was a specific, clear and convincing reason to find Plaintiff's symptom complaints not entirely credible.

In a related medication issue, the ALJ found Plaintiff's credibility was undermined by the effectiveness of medication in treating mental health symptoms. Tr. 22. An impairment that can be effectively controlled with medication is not disabling. *Warre*, 439 F. 3d at 1006. Here, the ALJ found medication for mental impairments was effective in relieving Plaintiff's symptoms. Tr. 22. With respect to Plaintiff's complaints of irritability, the ALJ noted Plaintiff admitted his

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

symptoms had improved with the recent addition of Prozac therapy.  Tr. 22; *see, e.g.*, Tr. 474 (on July 15, 2014, treatment provider Courtney Primeau, MA-C, noted irritability may have stemmed from anxiety and depression, she reported moderate improvement in Plaintiff's experience of aggression with Prozac and increased the dosage); Tr. 482 (on July 28, 2014, Plaintiff told provider Kristen Tucker, LMHC, that his aggressiveness had diminished since taking his medication); Tr. 489 (in August 2014, Plaintiff told Ms. Primeau the Prozac seemed to help with irritability).  The ALJ properly considered the lack of prescribed pain medication and the effectiveness of psychotropic medication when he discounted Plaintiff's symptom complaints.

### 3. *Daily Activities*

Third, the ALJ found the limitations Plaintiff alleged were inconsistent with his prior statements that described a "fairly active lifestyle."  Tr. 22.  Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  However, a claimant need not be utterly incapacitated in order to be eligible for benefits.  *See Orn. v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities  . . .does not in any way detract from her credibility as to her overall disability.").  Regardless, "[e]ven where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's

testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the ALJ noted that Plaintiff testified at the hearing that he spends his day sitting in a chair looking out the window and watching movies, and only performs household chores approximately every four weeks because of his pain. Tr. 22 (referring to Tr. 74, 78, 82-84). Plaintiff further testified that his impairments were so severe he could walk only one block and stand for 5-10 minutes. Tr. 22 (referring to Tr. 73-74). However, the ALJ noted that in October 2012,[5] Plaintiff told examining psychiatrist Amy Dowell, M.D., he cared for his personal hygiene, cooked for himself and did housework; Plaintiff reported he had no problems in these areas. Tr. 22 (citing Tr. 380). The ALJ noted that Plaintiff told Dr. Dowell his hobbies included online gaming, including the game World of Warcraft. Tr. 22 (citing Tr. 380-81). In fact, Plaintiff told Dr. Dowell that he spends the majority of his day playing video games. Tr. 381. The ALJ further noted that in June 2014, Plaintiff told Dr. Quackenbush that he had the capacity to perform all basic household chores; he cleans, cooks, performs laundry tasks, and

---

[5] The ALJ cites Tr. 380 as dated November 2011. Tr. 22. Dr. Dowell's report indicates the examination was conducted October 13, 2012. Tr. 379. This appears to be a harmless scrivener's error.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

shops for groceries and uses the computer. Tr. 22 (citing Tr. 431).[6] These reported activities, especially shopping, are inconsistent with Plaintiff's claimed inability to walk more than one block and stand for more than five or ten minutes, and inconsistent with his statement that he sits in a chair looking out the window all day. Tr. 22 (citing Tr. 431); *see* Tr. 82 (Plaintiff testified he does absolutely "nothing." He sits in a chair and looks out the window.). In evaluating the credibility of symptom testimony, the ALJ may utilize ordinary techniques of credibility evaluation, including prior inconsistent statements. *See Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ reasonably relied on Plaintiff's inconsistent reporting of his daily activities and functionality in assessing Plaintiff's credibility.

Plaintiff contends the ALJ found Plaintiff's ability to bathe and to prepare food for himself indicated his symptom claims lacked credibility. ECF No. 14 at 14. However, as noted, the ALJ found Plaintiff's activities were inconsistent with allegedly disabling limitations, and these activities included much more than the ability to bathe and cook. For instance, Plaintiff earned two associate degrees after onset, despite allegations of disabling physical and mental limitations. Tr. 22-23

---

[6] Dr. Quackenbush conducted the examination on June 26, 2014, Tr. 429, and the hearing occurred on August 28, 2014, Tr. 45, approximately 60 days apart.

(citing Tr. 429) (in June 2014 Plaintiff told Dr. Quackenbush he earned two associate degrees at two different schools after onset); Tr. 431 (Plaintiff told Dr. Quackenbush that he recently sat at the far back of the room in his classes), which is inconsistent with the disabling limitations alleged, including Plaintiff's contention he could walk maybe a block and stand only five or ten minutes, Tr. 74, and spent his day sitting in a chair looking out the window.  Tr. 82.[7]  The ALJ reasonably determined that the ability to attend two different schools and obtain degrees is inconsistent with walking only a block and standing no more than five to ten minutes, and with only sitting in a chair looking out the window.

As another example, the ALJ found that with respect to claimed mental limitations, Plaintiff's "allegation he would be unable to work because he does not like being around others is contradicted by his admission that he earned two associates degrees after his alleged onset of disability."  Tr. 22.  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling symptoms in making the credibility determination.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  The ALJ noted that in a June 26, 2014, consultative examination, Plaintiff admitted he earned a degree in computer

---

[7] One of the programs was completed in April 2014, approximately three months before the hearing. Tr. 432.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

graphics and design from ITT Tech in 2011, with a 3.8 grade point average, and a degree in web design and tech support from Interface College in 2013, with a 3.4 grade point average.  Tr. 22-23.  The ALJ concluded that Plaintiff's ability to regularly attend classes and earn two associated degrees after his alleged onset date of disability establishes his mental impairments would not prevent him from performing work that does not involve more than occasional superficial contact with the public, crowded work settings, interaction with more than small groups of coworkers, close cooperation with coworkers, or in any teamwork-type of activities.  Tr. 23.

In contrast, Plaintiff contends the ALJ erred when he found Plaintiff's claim he does not want to be around other people is contradicted by Plaintiff's ability "to obtain a trade school diploma."  ECF No. 14 at 14.  Plaintiff contends there is evidence that there were only two other students in one or both of Plaintiff's associate degree programs (Plaintiff does not specify), and Plaintiff alleges this is the reason for his success despite allegedly pervasive social anxiety.  ECF No. 14 at 14 (citing Tr. 61).  The Court notes that Plaintiff told Dr. Quackenbush when he recently attended classes he sat at the far back of the room, stating "people drive [him] crazy," and reported the instructor at Interface College referred fellow students to Plaintiff to learn computer assisted design.  Tr. 431.  Even if this evidence may be interpreted more favorably to the Plaintiff, it is susceptible to

more than one rational interpretation, and therefore the ALJ's conclusion must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When discussing daily activities, Plaintiff further stated "[n]otably, the ALJ does not dispute the uncontroverted evidence that [he] must nap during the day." ECF No. 14 at 14. This is the entire argument addressing napping. The Court declines to address this issue because it was not raised with specificity in Plaintiff's briefing. *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

### 4. *Lack of Objective Medical Evidence*

The ALJ concluded that the objective medical evidence did not support Plaintiff's claims of disabling symptoms, specifically finding that "the objective medical and psychological evidence also establishes [Plaintiff] has the capacity to perform the limited range of medium work outlined above." Tr. 23. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also* S.S.R. 96-7p. Minimal objective evidence is a factor which may be relied

upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680. The ALJ cited numerous records indicating unremarkable or mild medical findings.

The ALJ found, for example, that although Plaintiff presented with complaints of knee pain on April 30, 2014, physical examination revealed only faint swelling and mildly reduced range of motion of the left knee; there was no joint deformity, heat, swelling, erythema, effusion, or reduced range of motion of the right knee. Tr. 23 (citing Tr. 397). Importantly, the ALJ found that at the same time, Plaintiff had no notable gait disturbance and he ambulated without the use of an assistive device. Tr. 23 (citing Tr. 398).

The ALJ further found, as another example, that Plaintiff underwent podiatric examination on July 15, 2014. Tr. 23 (citing Tr. 439). Upon examination, Dr. Swanstrom found Plaintiff demonstrated normal touch, pin, vibratory and proprioception sensation in both feet. Tr. 23 (citing Tr. 439). Likewise, protective sensation was intact in both feet; Tinel sign was absent bilaterally; and color, texture and tugor were normal in the lower bilateral extremities. Tr. 23 (citing Tr. 439). Although Plaintiff had severe pain on palpitation of the left medial tubercle and mild pain on palpitation of the right medical tubercle, Dr. Swanstrom noted pain-free and normal range of motion of the bilateral lower extremity muscle groups; in addition, x-rays demonstrated a

moderate plantar heel spur on the left, but no lucencies in calcaneal tuberosity were noted. Tr. 23 (citing Tr. 439).

The ALJ noted similar findings, as yet another example, during Dr. Swanstrom's August 12, 2014 examination. Tr. 23 (citing Tr. 467). Dr. Swanstrom again found Plaintiff had normal touch, pin, vibratory and proprioception sensation in both feet; Tinel sign was absent bilaterally, and color, texture and tugor were normal in the bilateral lower extremities. Tr. 23 (citing Tr. 467). Plaintiff had severe pain on palpitation of the left medial tubercle and moderate pain on palpitation of the right medical tubercle; pain-free and normal range of motion of the bilateral subtalar and midtarsal joints; and 5/5 muscle strength in the four bilateral lower extremity muscle groups. Tr. 23 (citing Tr. 467). Plaintiff described his right plantar fasciitis as worse from the previous visit a month earlier, in July, but indicated his left plantar fasciitis had improved. Tr. 23 (citing Tr. 467). The ALJ further noted, as still another example, that Dr. Swanstrom's next exam, on September 9, 2014, was essentially unchanged from the previous examination. Tr. 23 (citing Tr. 469-70). The ALJ concluded that these largely benign findings undermined Plaintiff's claim of disabling impairments. Tr. 23.

Plaintiff alleges the ALJ erroneously relied solely on a lack of objective medical evidence when he discredited Plaintiff's symptom claims. ECF No. 14 at

13. While Plaintiff is correct that an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence, *Rollins,* 261 F.3d at 857; *Bunnell,* 947 F.2d at 346-47, here the ALJ offered a number of legally sufficient reasons to reject Plaintiff's symptom claims. Thus, the ALJ did not err in relying on the lack of objective evidence supporting Plaintiff's symptom claims. This was a clear and convincing reason to discredit Plaintiff's symptom complaints.

### 5. Lack of Treatment

Next, the ALJ found Plaintiff's symptom complaints less than credible because there were significant gaps in his treatment history. Tr. 22. An ALJ is permitted to consider lack of treatment in his credibility determination. *Burch,* 400 F.3d at 681. Moreover, "in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina*, 674 F.3d at 1113 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). However, disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot afford for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

As the ALJ found, Plaintiff did not seek or require any medical treatment between onset on September 28, 2008 and November 2011. Tr. 22 (citing Tr. 369)

(on November 28, 2011, Plaintiff saw Dr. Ugorji for asthma, and this is the first treatment record). As the ALJ further found, Plaintiff also did not require or seek treatment between July 2012 and February 2014. Tr. 22 (citing Tr. 390) (Plaintiff saw Dr. Ugorji on July 2, 2012 for asthma and numbness of the hand and feet); Tr. 392 (Plaintiff next saw Dr. Ugorji on February 10, 2014). The ALJ concluded Plaintiff's treatment efforts and requirements were inconsistent with the presence of debilitating physical or mental impairments. Tr. 22.

Plaintiff contends the ALJ should not have relied on his lack of treatment because he could not afford medical care and was not insured until early 2014. ECF No. 14 at 13 (citing Tr. 72-73) (on August 28, 2014, Plaintiff testified he "didn't get insurance until the first of this year"); Tr. 88 (Plaintiff testified he currently had insurance through the state at Washington Apple Health). As noted, disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. *Orn*, 495 F.3d at 638; *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999); *Gamble*, 68 F.3d at 321. Here, the ALJ failed to consider or reject Plaintiff's explanations for failing to seek additional treatment. *See Molina*, 674 F.3d at 1113 (ALJ may rely on failure to seek treatment or follow prescribed course of treatment when claimant's failure is "unexplained or inadequately explained."). Accordingly, this Court finds the ALJ's reasoning is not clear and

convincing. The error is harmless, however, because the ALJ offered other legally sufficient reasons to discredit Plaintiff's symptom claims. *See Carmickle,* 533 F.3d at 1162.

**B. Medical Opinion Evidence**

Next, Plaintiff faults the ALJ for discounting the opinion of Dr. Kingsley Ugorji, Plaintiff's primary care physician, who opined Plaintiff required a cane for ambulation. ECF No. 14 at 16-19.[8]

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight

_____

[8] Plaintiff further contends the Appeals Council failed to credit new evidence, specifically, the opinion of examining psychologist Kayleen Islam-Zwart, Ph.D. ECF No. 21 at 7. Because Dr. Islam Zwart's records are new evidence, the Court addresses this issue separately *infra.*

to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–831).

Plaintiff faults the ALJ for discounting the opinion of treating Plaintiff's primary care physician, Dr. Ugorji. ECF No. 14 at 16-18. On September 10, 2014, Dr. Ugorji prescribed a cane for Plaintiff. Tr. 23 (citing Tr. 472). The ALJ did not credit Dr. Ugori's opinion Plaintiff needed a cane to ambulate. Tr. 23.

Because Dr. Ugori's opinion was contradicted by Dr. Staley, Tr. 140,[9] the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Ugorji's opinion. *Bayliss*, 427 F. 3d at 1216.

Defendant contends that Dr. Ugorji's prescription for a cane was not a medical opinion. ECF No. 20 at 10. A medical opinion is a statement from an acceptable medical source that reflects judgments about the nature and severity of a claimant's impairment(s), including symptoms, diagnosis and prognosis, and what a claimant can still do despite impairment(s), and physical or mental restrictions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

Regardless of whether the prescription for a cane qualifies as a medical opinion, the ALJ adequately supported his conclusion. First, the ALJ found Dr. Ugori's opinion that Plaintiff needs a cane is inconsistent with the record. Tr. 23. An ALJ may properly reject a medical opinion that is inconsistent with the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ

---

[9] Plaintiff contends the ALJ should have found Dr. Ugorji's opinion that Plaintiff required a cane was uncontradicted. ECF No. 14 at 16. Reviewing physician Dr. Staley opined Plaintiff was able to stand or walk 6 hours in an 8-hour day, and did not indicate that any assistive device such as a cane was required, Tr. 139-40, which contradicts Dr. Ugorji's opinion.

may discredit treating physicians' opinions that are unsupported by objective medical findings or the record as a whole). An ALJ may give less weight to a medical opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216.

The ALJ found, for example, Dr. Ugorji's opinion that Plaintiff required a cane was not supported by the treating podiatrist's examination findings and records. Tr. 23. The ALJ found that on July 15, 2014, treating podiatrist Dr. Swanstrom's examination revealed Plaintiff had normal touch, pin, vibratory and proprioception sensation in both feet and Tinel sign was absent bilaterally.[10] Tr. 23 (citing Tr. 439). The ALJ further found that on examination on August 12, 2014,

———————————

[10] The ALJ found that at this exam Dr. Swanstrom also found protective sensation was intact in both feet; and color and tugor were normal in the bilateral lower extremities. Tr. 23 (citing Tr. 439). Dr. Swanstrom noted Plaintiff had severe pain on palpitation of the left medical tubercle and mild pain on palpitation of the right medical tubercle; range of motion of the subtalar and midtarsal joints was normal and pain-free; and muscle strength was 5/5 in the four bilateral extremity muscle groups. Tr. 23 (citing Tr. 439). Further, Dr. Swanstrom reported that x-rays demonstrated a moderate plantar heel spur on the left, but no lucencies in calcaneal tuberosity were noted. Tr. 23 (citing Tr. 439).

Dr. Swanstrom again noted normal touch, pin, vibratory and proprioception sensation in both feet. Tr. 23 (citing Tr. 467). In addition, the ALJ further found, testing revealed Tinel sign was negative bilaterally, and color, texture and tugor were normal in the bilateral lower extremities. Tr. 23 (citing Tr. 467). Further, the ALJ found Dr. Swanstrom additionally observed that although Plaintiff had severe pain on palpitation of the left medical tubercle and moderate pain on palpitation of the right medical tubercle, muscle strength again was 5/5 in the four bilateral lower extremity muscle groups. Tr. 23 (citing Tr. 467). The ALJ notes Dr. Swanstrom further described Plaintiff's right plantar fasciitis as worse from the previous visit, but left plantar fasciitis was improved. Tr. 23 (citing Tr. 467). On September 9, 2014, the ALJ notes, Dr. Swanstrom opined podiatric examination was essentially unchanged. Tr. 23 (citing Tr. 469-70). Moreover, the ALJ additionally found Dr. Swanstrom discussed with Plaintiff the "high success rates" with conservative treatment of this pathology. Tr. 19 (citing Tr. 465).

Next, the ALJ found the observations of examining physicians did not support Dr. Ugorji's opinion Plaintiff needed a cane. Tr. 23. An ALJ may discredit a treating physician's opinions that are unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. Here, the ALJ found examining physicians observed Plaintiff ambulated without a notable gait disturbance. Tr. 23 (citing Tr. 398 (on April 30, 2014, treating source Lisa

Phillips, ARNP, observed no notable gait disturbance and stated Plaintiff "ambulates without the use of an assistive device."); Tr. 430 (in June 2014, examining psychologist Dr. Quackenbush observed that Plaintiff's gait appeared to be within normal limits)). The ALJ found the assessed need for a cane was unsupported by the record, specifically, the findings and observations of treating and examining sources. This was a specific, legitimate reason to give limited weight to Dr. Ugorji's opinion.

Next, the ALJ found Dr. Ugorji's opinion Plaintiff needs a cane is contradicted by Plaintiff's actual functioning. Tr. 23. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The ALJ found in that June 2014, Plaintiff told Dr. Quackenbush his mode of transportation was walking. Tr. 23 (citing Tr. 431) (Plaintiff reported he "walks to get around town, and he avoids the bus."). The ALJ reasonably inferred that choosing to walk rather than ride the bus is inconsistent with requiring a cane. This was a specific, legitimate reason to give little weight to Dr. Ugorji's opinion that Plaintiff needed a cane.

In addition, Defendant correctly points out Dr. Ugorji's records show that at the time he prescribed a cane for Plaintiff, he was not treating Plaintiff's foot pain; instead, Dr. Ugorji prescribed the cane because Plaintiff requested it. ECF No. 20

at 10-11 (citing Tr. 536) (on September 10, 2014, Plaintiff saw Dr. Ugorji for a finger injury, and Plaintiff requested a prescription for a cane)). Moreover, the prescribed cane is unsupported by any examination related to foot pain, and Dr. Ugorji cites no objective findings in his September 10, 2014 treatment note supporting the cane prescription.

In sum, the ALJ rejected Dr. Ugorji's opinion Plaintiff needed a cane because it was not supported by the examination findings of the treating podiatrist, the observations of examining and treating sources, and Plaintiff's functioning. These were specific, legitimate reasons to give limited weight to Dr. Ugorji's opinion.

**C. Lay Witness Testimony**

Plaintiff challenges the ALJ's failure to discuss the lay witness testimony of Plaintiff's friend, Eileen Gilbreath. ECF No. 14 at 19; ECF No. 21 at 7-8 (citing Tr. 310-17). Plaintiff contends such lay testimony concerning a claimant's ability to work "cannot be disregarded without comment." ECF No. 14 at 19 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Moreover, Plaintiff contends it "cannot be said that the error is not harmless because it is not known whether the ALJ could have been swayed by the lay opinion." ECF No. 14 at 19. Defendant responds that error if any should be disregarded as harmless. ECF No. 20 at 15-16.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Social Security*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen*, 100 F.3d at 1467 (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

On September 8, 1012, Ms. Gilbreath stated that she has known Plaintiff for two years and they spend every day together. Tr. 310. Their activities included sitting and talking in Plaintiff's room in a house he shared with roommates. Tr. 310. With respect to Plaintiff's ability to work, Ms. Gilbreath opined Plaintiff "can barely walk down the stairs before having an asthma attack" and he "cannot be around other people." Tr. 310. When asked to describe Plaintiff's activities from the time he wakes up until he goes to bed, Ms. Gilbreath wrote: "sits in his room." Tr. 311. Ms. Gilbreath noted Plaintiff had a cat that he alone cared for and she stated this meant Plaintiff fed, watered and played with the cat. Tr. 311. She stated Plaintiff could not walk around the block without experiencing trouble breathing; asthma sometimes interfered with his sleep; and asthma affected his ability to lift, walk and climb stairs. Tr. 311, 315. Ms. Gilbreath indicated Plaintiff did laundry but did not do house or yard work because "asthma acts up

every time he tries." Tr. 312. According to Ms. Gilbreath, Plaintiff could only

walk a few steps before he needed to stop and rest. Tr. 315.

Ms. Gilbreath further stated Plaintiff went outside five times a week and

drove; once a month, he shopped for about an hour. Tr. 312-13. Ms. Gilbreath

indicated Plaintiff paid bills, counted change, handled a savings account, and used

a checkbook/money orders. Tr. 313. She stated Plaintiff had no problems with

personal care; needed no reminders for hygiene such as bathing, but did need

reminders to use his inhaler; in addition, Plaintiff spent about an hour once a week

cooking single course complete meals. Tr. 311-12. Ms. Gilbreath opined Plaintiff

had no problems with attention, finished what he started, and followed both written

and spoken instructions very well. Tr. 315.

Ms. Gilbreath inconsistently reported Plaintiff was able to go out alone, Tr.

313 (she checked yes on the form indicating Plaintiff can go out alone), and

Plaintiff needs someone to accompany him, Tr. 314 (she checked yes indicating

Plaintiff needed someone to accompany him on social activities; no activities

outside the home are specified). Ms. Gilbreath stated Plaintiff's hobbies included

playing computer games daily for a few hours; she opined Plaintiff would rather

play games than be around people; and Ms. Gilbreath indicated she was the only

person Plaintiff spent time with. Tr. 314. Moreover, Ms. Gilbreath indicated in

the past Plaintiff went out with friends; however he has "an explosive temper and

no tolerance for other people." Tr. 315. Finally, Ms. Gilbreath noted Plaintiff had been fired because of anger management problems, did not handle stress or change in routine well, and was paranoid that people laugh at him. Tr. 316.

Here, the ALJ failed to give any reasons, germane or otherwise, for rejecting Ms. Gilbreath's opinion. This was error. *See Molina,* 674 F.3d at 1114 ("under our rule that lay witness testimony '*cannot* be disregarded without comment,' the ALJ erred in failing to explain her reasons for disregarding the lay witness testimony, either individually or in the aggregate.") (citing *Nguyen*, 100 F.3d at 1467)). However, as in *Molina*, the error here is also harmless. *See Molina,* 674 F.3d at 1115 (finding the error in failing to explain reasons for disregarding lay testimony harmless). The Court stated that where lay testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with the Court's prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial *per se*. *Molina*, 674 F.3d at 1117.

Here, the Court notes the lay witness provided testimony similar to that of Plaintiff, i.e., both Plaintiff and Ms. Gilbreath stated that Plaintiff was less functional due to asthma-related problems, mobility problems, and social deficits than the ALJ found. *See, e.g.*, *compare* Tr. 83-85 (Plaintiff testified he sits in a

chair all day) *with* Tr. 311 (Ms. Gilbreath stated Plaintiff sits in a chair in his room

from the time he wakes up until he goes to bed); *compare* Tr. 73-74 (Plaintiff

indicated he can walk a block and stand for 5-10 minutes) *with* Tr. 315 (Ms.

Gilbreath stated Plaintiff could walk a few steps).  As previously discussed, the

ALJ properly rejected Plaintiff's testimony about the severity of his limitations on

the grounds that the claims were inconsistent with the objective clinical findings,

including his performance on physical examinations, the longitudinal treatment

history, his activities, and other inconsistencies in the record.  Tr. 22-26.  As in

*Molina*, here, the lay testimony did not describe any limitations beyond those

Plaintiff himself described, which the ALJ discussed at length and rejected based

on well-supported, clear and convincing reasons.  *Molina*, 674 F.3d at 1122.

Moreover, Plaintiff fails to articulate any additional limitations identified by Ms.

Gilbreath that the ALJ should have adopted.  Accordingly, the error is harmless

since it would not change the ultimate result.  *See Stout*, 454 F.3d at 1055 (error

harmless where it is non-prejudicial to claimant or irrelevant to the ALJ's ultimate

disability conclusion).

**D.  New Evidence**

Plaintiff submitted Dr. Islam-Zwart's opinion for the first time to the

Appeals Council.  Tr. 2; ECF No. 15.  In the Ninth Circuit, a district court must

consider new evidence submitted for the first time to an Appeals Council when the

Council considers that evidence in denying review of the ALJ's decision.  *Brewes v. Comm'r, of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).  The *Brewes* Court appears to distinguish between evidence submitted and evidenced considered:

> We are persuaded that the administrative record includes evidence submitted to *and* considered by the Appeals Council.  The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, *so long as the evidence relates to the period on or before the ALJ's decision*.

*Brewes*, 682 F.3d at 1162 (citing 20 C.F.R. § 404.970(b)) (emphasis added).  The regulations circumscribe what evidence the Appeals Council may consider.  20 C.F.R. § 404.970(b).  The Appeals Council need not consider evidence that does not relate to the period on or before the ALJ's decision.  *Id.*

First, Plaintiff failed to develop this argument.  Plaintiff's entire argument consists of the following: "At minimum, the Court should remand to consider the new evidence contained in Dr. Islam-Zwart's evaluation."  ECF No. 14 at 19.  Because Plaintiff failed to develop this argument, the Court may decline to consider it.  *Carmickle*, 533 F.3d at 1161 n.2 ("[I]ssues not argued with specificity in briefing will not be addressed.").

As to the merits, it is unclear whether the Appeals Council "considered" Dr. Islam-Zwart's report.  Tr. 1-2 ("…we considered the reasons you disagree with the

decision and the additional evidence. We found this information does not provide a basis for changing the [ALJ's] decision."); *compare* Tr. 2 ("This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 26, 2014.").

The Court notes that the Appeals Council did not include Dr. Islam-Zwart's report in the administrative record, which is indicative of having not considered the evidence. *See* 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) (If additional evidence does not relate to the period on or before the date of the ALJ hearing decision, the Appeals Council will return it.). Moreover, the Court notes that Plaintiff has made no persuasive argument that the Appeals Council *actually* considered the report or was required to consider it under the regulations. *See* ECF No. 14 at 19.

However, even if the Appeals Council considered Dr. Islam-Zwart's opinion and it became part of the record, the opinion is irrelevant. Dr. Islam-Zwart evaluated Plaintiff on May 11, 2015. ECF No. 15 at 2. She roots her opinions in the results of the tests she administered on that date. ECF No. 15 at 5, 8-9. Dr. Islam-Zwart did not indicate that her opinion as to Plaintiff's functioning was retroactive to a period that was under consideration by the ALJ. Her opinion does not relate to whether Plaintiff was disabled prior to September 26, 2014. Therefore, her opinion does not pertain to whether the ALJ erred.

Defendant contends because the Appeals Council did not make the new evidence part of the record, Plaintiff's sole recourse is to seek a remand pursuant to sentence six of 42 U.S.C. § 405(g). ECF No. 20 at 14. This provision permits the Court to retain jurisdiction while remanding the case to the agency to add new evidence to the record if there is a showing that the evidence is new and material and the claimant shows good cause for not presenting the evidence earlier. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-100 (1991); *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (reiterating remand for consideration of new evidence requires showing both that the evidence is material and that a claimant has shown good cause for having failed to present the new evidence earlier). Plaintiff did not respond to Defendant's arguments regarding Plaintiff's failure to meet the requirements for a sentence six remand, other than generically asking that the Court "remand to consider the new evidence[.]" *See* ECF 21 at 7. Because Plaintiff fails to make any showing that the new evidence is material, a sentence six remand is not warranted.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **DENIED.**

1       2. Defendant's Motion for Summary Judgment, ECF No. 20, is **GRANTED.**

2       The District Court Executive is directed to file this Order, enter

3   JUDGMENT FOR THE DEFENDANT, provide copies to counsel, and **CLOSE**

4   THE FILE.

5       DATED August 30, 2017.

6                          _s/Mary K. Dimke_
                         MARY K. DIMKE
7              UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20